201 So.2d 440 (1967)
Alfred MANHEIM, Petitioner,
v.
FORD MOTOR COMPANY et al., Respondents.
No. 36149.
Supreme Court of Florida.
July 19, 1967.
Morris Berick, Miami Beach, for petitioner.
Dixon, DeJarnette, Bradford, Williams, McKay & Kimbrell and George O. Mitchell, Miami, for respondents.
ERVIN, Justice.
The District Court of Appeal Third District, certified to us that its decision in this case, reported in 194 So.2d 54, passes upon a question of great public interest "in that it concerns the liability of automobile manufacturers to the ultimate purchasers of their products."
The petition recites that Plaintiff-Petitioner Alfred Manheim, sued Defendants-Respondents Ford Motor Company, a corporation, and Gables Lincoln-Mercury, Inc., a corporation, in the Dade County Circuit Court.
The complaint alleged that Gables Lincoln-Mercury, Inc., sold to Manheim a new 1964 Lincoln Continental four-door convertible "and warranted and represented the same to be well constructed without defective parts and workmanship and to be suitable for use as a motor vehicle"; that Manheim relied upon said representations and warranty. He paid $6,791.55 for the convertible. Manheim alleged the motor vehicle was not well constructed, contained defective parts and workmanship and was not suitable for use as a motor vehicle and under proper use by Manheim has continuously failed to operate properly, has continuously broken down and given Manheim no useful service as a motor vehicle.
Manheim alleged Ford Motor Company is the manufacturer of said motor vehicle and Gables Lincoln-Mercury, Inc., is the dealer and agent for said Ford Motor Company. He alleged that Ford Motor Company represented and warranted to the general public *441 and to him in order to induce them and him to purchase the motor vehicle and similar ones that such motor vehicles are well constructed of non-defective parts, of excellent workmanship and material and that said motor vehicle is suitable for use as a motor vehicle. Manheim alleges he relied upon said warranties and representations and purchased said motor vehicle in reliance thereupon. He alleged said motor vehicle did not respond to reasonable efforts by defendants to make corrections and repairs thereon.
In response to a motion of defendants for a more definite statement, Manheim, under oath, deposed that prior to his purchase he relied upon written and oral representations as to the alleged quality, fitness and suitability of the convertible which emanated from Ford Motor Company and the dealer. He stated Ford made said representations in all types of advertising media, viz., magazines, newspapers, television, and brochures which he identified; that the dealer made oral representation to Manheim that the convertible is the finest automobile in the world; that it is an automobile of perfection; that it would be trouble-free for thousands of miles; that it was well constructed without defective parts or workmanship and that it was suitable for use as a motor vehicle.
The Ford Motor Company moved for a summary judgment, supporting its motion by an affidavit of its assistant secretary that its dealer-agreement with Gables Lincoln-Mercury, Inc., did not in any way create the relationship of principal and agent between Ford and said dealer, and that the dealer was not authorized in any manner to create or assume to create any obligation on behalf of Ford; that Ford would advise its dealers in writing of the warranties applicable to Ford products which are to be extended to each purchaser by Ford and its dealers; that Ford warrants to its dealer each part of each vehicle sold by Ford to the dealer to be free under normal use and service from defects in material and workmanship for 24 months from the date of sale to the first purchaser or until it has been driven 24,000 miles; that under such warranty Ford's obligation is limited to replacement without charge to dealer of such parts of the vehicle that are returned to Ford and acknowledged by it to be defective and to reimbursement to the dealer for the labor of repairing or replacing such parts. Several items, viz., tires, tubes, normal maintenance services; normal replacement of service items, viz., filters, spark plugs, ignition points, wiper blades, brakes or clutch lining and deterioration of soft trim and appearance items due to use and exposure are all excluded from the warranty. The warranty concludes with these words:
"This warranty is expressly in lieu of any other express or implied warranty, including any implied warranty of merchantability or fitness, and of any other obligation on the part of the Company, except such obligation as the Company may have assumed in its warranty and Policy manual or other separate written agreement."
The trial court granted motion for summary judgment in favor of Ford. Manheim appealed. The District Court affirmed per curiam "upon authority of Rozen v. Chrysler Corp., Fla.App. 1962, 142 So.2d 735, and Friedman v. Ford Motor Co., Fla.App. 1965, 179 So.2d 371.
We have jurisdiction of the cause due to the certification of the District Court of Appeal, Third District.
Our study of the issues and merits of the cause and the controlling authorities brings us to the conclusion the express written warranty of Ford to its dealer does not preclude recovery by Petitioner in this action.
Our Court has become aligned with those courts holding that an action may be brought against a manufacturer notwithstanding want of privity. Hoskins v. Jackson Grain Company, Fla. 1953, 63 So.2d 514. In this connection see also: Posey *442 v. Ford Motor Co., Fla.App., 128 So.2d 149; Posey v. Ford Motor Company, Fla.App., 138 So.2d 781; Blanton v. Cudahy Packing Co., 154 Fla. 872, 19 So.2d 313; Continental Copper and Steel Industries, Inc., v. E.C. "Red" Cornelius, Inc., Fla.App., 104 So.2d 40; Cliett v. Lauderdale Biltmore Corp., Fla., 39 So.2d 476; Matthews v. Lawnlite Co., Fla., 88 So.2d 299; and Power Ski of Florida, Inc., v. Allied Chemical, Fla.App., 188 So.2d 13.
We call attention particularly to the concurring opinion of Judge Carroll of the District Court in this cause.
From the rule of law emerging from the cited Florida cases and the rule of law already adopted in other jurisdictions, we conclude that neither the absence of privity between the manufacturer and a purchaser such as Manheim, nor the execution of a written warranty agreement between the manufacturer and its dealer of the kind hereinbefore appearing operates to preclude recovery on the basis of implied warranty of a product due to its defects and lack of fitness and suitability.
We see no basis for a legal distinction between products liability flowing from implied warranty for personal injuries or for lack of fitness or suitability of the product itself of the kind involved in the instant case.
We could extend this opinion by including several citations from other jurisdictions pertinent to the conclusion we have reached. However, we will refer only to those few which more appropriately express the views we hold concerning the questions posed in the case certified to us.
In Jarnot v. Ford Motor Company, 191 Pa.Super. 422, 156 A.2d 568, at 572, it was held:
"* * * But even a provision in a contract of sale that the contract contains all of the agreements between the parties does not preclude an implied warranty of merchantability. Frigidinners, Inc. v. Branchtown Gun Club, 176 Pa. Super. 643, 109 A.2d 202; The White Company v. Francis, 95 Pa.Super. 315. Cf. Laub, Trial Guide, §§ 549.4, 549.8 and 549.6 where it is said: `Even though a sales contract may negative a warranty because not contained in the writing, this does not preclude evidence of an implied warranty.' Moreover, a manufacturer who by means of advertising extols his product, in the effort to persuade the public to buy, may thereby incur liability to a purchaser notwithstanding privity between the purchaser and the manufacturer is wholly lacking. Cf. 42 Marquette Law Review, 4, p. 521 (1959) and 8 Cleveland-Marshall Law Review, 1, p. 14 (1959). Because of the principle of advertised-product-liability the trial court in instant case cannot be convicted of error by a passing reference to Ford's national advertising even though no advertisement was made a part of the record."
In Sperry Rand Corporation v. Industrial Supply Corporation, Fla., United States Court of Appeal, 5th Circuit, 337 F.2d 363 (1964) it is said at page 369:
"The appellate courts of Florida with an occasional contribution from this Court, have fully participated in the development of the doctrine of implied warranty of fitness for a disclosed purpose. * * *"
* * * * * *
"* * * The express warranties of the contract are not inconsistent with and do not exclude an implied warranty of fitness for a known purpose." (at 371)
* * * * * *
"* * * we think, the better reasoned rule is that a contract clause that all agreements are contained in the writing does not operate to bar recovery on an implied warranty of fitness for use. 46 Am.Jur. 518, Sales § 335; 77 C.J.S. Sales § 317b., p. 1164." (at 371)

*443 * * * * * *
"* * * The contention of Sperry Rand has been answered by the Supreme Court of Florida in saying:
"`The fact that a contract of sale is in writing does not necessarily exclude warranties that may be implied by law; and where the alleged verbal warranty sought to be established is only what would be implied, evidence thereof does not change the legal effect of the contract, and is therefore admissible.' McDonald v. Sanders, 103 Fla. 93, 137 So. 122. Cf. Hoskins v. Jackson Grain Co., Fla., 63 So.2d 514." (at 371)
In Ford Motor Company v. Lonon, Tenn. 1966, 398 S.W.2d 240, it is held:
"The basic issue presented in this case is whether the manufacturer of a product that has been found to be seriously defective and unsuitable for use should be liable for a resulting commercial loss to the purchaser where there are no direct contractual relations between the purchaser and the manufacturer, in a situation where the purchaser has relied on the manufacturer's booklets and tradename in making the purchase." (at 242)
* * * * * *
"`The world of merchandising is, in brief, no longer a world of direct contract; it is, rather, a world of advertising and, when representations expressed and disseminated in the mass communication media and on labels (attached to the goods themselves) prove false and the user or consumer is damaged by reason of his reliance on those representations, it is difficult to justify the manufacturer's denial of liability on the sole ground of the absence of technical privity. Manufacturers make extensive use of newspapers, periodicals and other media to call attention, in glowing terms, to the qualities and virtues of their products, and this advertising is directed at the ultimate consumer or at some manufacturer or supplier who is not in privity with them. Equally sanguine representations on packages and labels frequently accompany the article throughout its journey to the ultimate consumer and, as intended, are relied upon by remote purchasers. Under these circumstances, it is highly unrealistic to limit a purchaser's protection to warranties made directly to him by his immediate seller. The protection he really needs is against the manufacturer whose published representations caused him to make the purchase.'" (at 244)
* * * * * *
"* * * The court found that where the manufacturer had stated that the product would meet the purchaser's expectations, it could be fairly charged with this economic loss, even though the manufacturer was not a party to the contract. There are similar decisions in Continental Copper & Steel Indus. Inc. v. E.C. "Red" Cornelius, Inc., 104 So.2d 40 (Fla.App. 1958), Hoskins v. Jackson Grain Co., 63 So.2d 514 (Fla. 1953)." (at 246)
See 46 Am.Jur. Sales § 314, at pages 496 and 497, and Cumulative Supplement (Pocket part) to said paragraph. 158 A.L.R. 1415, et seq. See also Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1.
We have answered the questions posed by the certification by the foregoing opinion. Accordingly, the decision of the District Court of Appeal is quashed with direction that further proceedings in the cause be in accord herewith.
THOMAS, Acting C.J., and DREW, THORNAL and BARNS (Retired), JJ., concur.