211 So.2d 576 (1968)
John DESANDOLO, a/k/a John Desandalo, Appellant,
v.
F & C TRACTOR AND EQUIPMENT CO., a Florida Corporation, Appellee.
No. 938.
District Court of Appeal of Florida. Fourth District.
June 18, 1968.
*577 Wallis E. Schulle of Fisher Prior Pruitt & Schulle, West Palm Beach, for appellant.
Robert S. Levy and Bruce J. Daniels of Levy & Levy, West Palm Beach, for appellee.
REED, Judge.
The plaintiff, F & C Tractor and Equipment Co., in its complaint against John Desandolo, the defendant, alleged that the defendant was liable to the plaintiff on a sixty day promissory note in the amount of $1,446.25.
The defendant's amended answer admits the execution of the note, but denies the indebtedness. By way of an affirmative defense the answer alleges that there was a failure of consideration for the note and incorporates by reference the allegations of the counterclaim. The counterclaim which is contained in the amended answer alleges that the plaintiff sold the defendant a John Deere Crawler Loader, Model 1010, a type of bulldozer used in construction work. The counterclaim alleges that the plaintiff represented the machine to be fit for the purposes for which a crawler loader is ordinarily used, but when it was put to that use by defendant, the crawler loader proved to be totally unfit. As a result, the defendant lost numerous contracts and profits. The counterclaim concludes with a demand for damages in excess of $10,000.
In the defendant's deposition he admits that he made no payments on the note and reiterates that at the time he signed the note he also signed a form contract with the plaintiff for the purchase of the crawler loader. A copy of the contract is attached to defendant's deposition. The contract contained a written warranty and an express disclaimer of all warranties express or implied. In his deposition Mr. Desandolo admits that the crawler loader was used by him for 600 hours of clock time.
On motion by the plaintiff, the trial court entered an order granting a summary judgment in favor of the plaintiff both as to the main claim and the counterclaim.
Thereafter, a final judgment in plaintiff's favor was entered. The defendant, Desandolo, appeals from the final judgment. The trial court's ruling on the main claim is in our opinion correct and requires no discussion. The issue with which we are concerned is whether or not there was an issue of material fact with respect to the counterclaim which should have precluded a summary judgment.
The counterclaim is not founded on the written warranty, but on an implied warranty arising out of representations allegedly made by the plaintiff that the crawler loader was fit for the purposes for which the defendant wished to use it.
The narrow question of law is whether or not the express disclaimer in the written *578 contract between the plaintiff-seller and defendant-buyer is valid and precludes liability of the plaintiff on the basis of an implied warranty of fitness or merchantability. In our opinion, the answer to this question must be in the affirmative.
The conditional sales contract between the plaintiff and the defendant stated:
"Seller warrants each new John Deere machine to be free from defects in materials or workmanship. The obligation of Seller under this warranty is limited to replacing parts which prove defective with normal and proper use within a period of 6 months from date of delivery to Purchaser. It will be the responsibility of the Purchaser to deliver machine to Seller's service shop or if this is not possible, to reimburse Seller for any travel or transportation expense involved in fulfilling this Warranty.
"The above warranty is in lieu of all other warranties, statutory or otherwise, express or implied, all other representations to Purchaser, and all other obligations or liabilities with respect to such machines including implied warranties of merchantability and fitness and Seller's obligation under all such warranties shall not exceed those set out above. * * *" (Emphasis added.)
The above quoted provision from the contract between the parties clearly provides that the express contractual warranty precludes any implied warranty of fitness and merchantability. The counterclaim is founded on an implied warranty of fitness; therefore, we are faced squarely with the question of the validity of the quoted contractual provision. If the provision is valid then the counterclaim cannot be sustained and the summary judgment was proper. On the other hand, if the clause is not valid, summary judgment should have been denied.
The Florida Supreme Court has never passed on the question presented by this appeal.
In the case of Corneli Seed Co. v. Ferguson, Fla. 1953, 64 So.2d 162, cited by defendant, the court had before it the question of the effect of a disclaimer clause in a contract between a seed merchant and a farmer who had purchased seed represented to him to be that of "black diamond" watermelons. The watermelon crop when grown was not black diamond, but was of a variety far less valuable. The disclaimer clause in the contract between the farmer-plaintiff and the defendant-merchant provided:
"The Corneli Seed Co. gives no warranty, express or implied as to description, quality, productiveness, or any other matter * * *."
The court held that this express clause did not have the effect of eliminating an implied warranty that the variety of watermelons was in fact black diamond, but the court did not hold that the clause was invalid as a matter of public policy. In its dictum the court indicated that the disclaimer would be valid to disclaim any warranties relating to quality or productiveness of the seed. The Corneli Seed Co. case does not control the present case because we are not dealing with a variance in variety. That is, we do not have a case where the machine which was purchased turned out to be of a variety different from that which the purchaser selected.
Another case relied on by the defendant is Manheim v. Ford Motor Company, Fla. 1967, 201 So.2d 440. There the purchaser of a Lincoln-Continental brought a suit against the Ford Motor Company and a dealer, Gables Lincoln-Mercury, Inc., when the vehicle allegedly proved unfit. The theory of the suit against Ford Motor Company was that representations by Ford in advertising the vehicle created an implied warranty of merchantability and fitness. Ford moved for a summary judgment on the ground that its contract with its dealer disclaimed liability for implied warranties. The trial court granted the summary judgment and the District Court of *579 Appeal for the Third District[1] affirmed on the authority of Rozen v. Chrysler Corporation, Fla.App. 1962, 142 So.2d 735, also a Third District decision.
The Manheim decision was certified by the District Court of Appeal to the Florida Supreme Court as passing on a question of great public interest "in that it concerns the liability of automobile manufacturers to the ultimate purchasers of their products." (Emphasis added.) The court held: (1) the plaintiff had a right to sue Ford Motor Company, the manufacturer of the motor vehicle, on the basis of an implied warranty of fitness even though there was an absence of privity between plaintiff and the manufacturer; and (2) the disclaimer in the written warranty agreement between Ford and its dealer did not operate to preclude implied warranties running to the purchaser. It is important to note the very limited scope of the decision. It deals only with the effect of a disclaimer in a contract between a manufacturer and its dealer. It does not involve the effect of a disclaimer in a contract, such as we have here, between a dealer and his purchaser. It does not involve, as here, the relationship between the purchaser and his immediate vendor who was not the manufacturer of the article.[2]
The defendant also cites the case of Henningsen v. Bloomfield Motors, Inc., 1960, 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1. In that case the plaintiff and his wife brought a suit against Chrysler Corporation and Bloomfield Motors, Inc., a Chrysler dealer. The allegations in the complaint indicate that as the result of an alleged defect in a Chrysler automobile purchased from Bloomfield Motors, Inc., the plaintiff's wife lost control of the motor vehicle and was involved in an accident sustaining injuries. The written warranty in that case was issued both by the dealer and by Chrysler Motors and contained a broad disclaimer clause similar to one present in this case. The disclaimer clause stated:
"`* * * It is expressly agreed that there are no warranties, express or implied, made by either the dealer or the manufacturer on the motor vehicle, chassis, of parts furnished hereunder except as follows.'"
The trial court held that the disclaimer clause did not preclude suit by the purchaser on an implied warranty of merchantability. On appeal, the Supreme Court of New Jersey held that the disclaimer as to the liability of both the manufacturer and the dealer was invalid as contrary to public policy. At page 95 of its decision the court stated:
"* * * In the framework of this case, illuminated as it is by the facts and many decisions noted, we are of the opinion that Chrysler's attempted disclaimer of an implied warranty of merchantability and of the obligations arising therefrom is so inimical to the public good as to compel an adjudication of its invalidity."
We decline to follow Henningsen v. Bloomfield Motors, Inc. Freedom of contract *580 is a fundamental right guaranteed by the Florida Constitution, Declaration of Rights, Section 1, F.S.A. Restricting this constitutionally guaranteed right is a matter more appropriate for the legislature than an appellate court. See Miami Laundry Co. v. Florida Dry Cleaning and Laundry Board, 1938, 134 Fla. 1, 183 So. 759, 764, 119 A.L.R. 956.
With regard to the power of an appellate court to declare a contract void as against public policy, the Court in Bituminous Casualty Corporation v. Williams, 1944, 154 Fla. 137, 17 So.2d 98, 101, held:
"It is only in clear cases that contracts will be held void as contrary to public policy as it is a matter of great public concern that freedom of contract be not lightly interfered with. When a particular contract, transaction, or course of dealing is not prohibited under constitutional or statutory provision, or prior judicial decision, it should not be struck down on the ground that it is contrary to public policy, except it be clearly injurious to the public good or contravene some established interest of society. * * Courts, therefore, should be guided by the rule of extreme caution when called upon to declare transactions void as contrary to public policy and should refuse to strike down contracts involving private relationships on this ground, unless it be made clearly to appear that there has been some great prejudice to the dominant public interest sufficient to overthrow the fundamental public policy of the right to freedom of contract between parties sui juris. * * *" (Emphasis added.)
It is difficult to see how the disclaimer clause here before the court clearly contravenes some dominant public interest. Although the transaction involved in the present case arose before the effective date of the Uniform Commercial Code, the public policy of the State of Florida as expressed by the legislature in the Uniform Commercial Code clearly protects the right of a party to exclude implied warranties of fitness and merchantability by a written disclaimer. See F.S. 1967, Section 672.2-316, F.S.A.
In the case of Steinhardt v. Consolidated Grocery Co., 1920, 80 Fla. 531, 86 So. 431, the Court had before it an action by a purchaser of a feed stuff called "rice-bran" which was sold to him under a specification showing that the rice bran contained rice hulls. The suit was based on an implied warranty that the rice bran was saleable in Florida. The Court held that there could be no such implied warranty because at the time of the sale by the defendant to the plaintiff, the Florida law prohibited the sale of rice bran containing rice hulls. This being the case, the asserted warranty would be in conflict with the terms of the agreement between the seller and the purchaser since the law is of necessity a part of every contract. This case does not squarely pass on the validity of an express disclaimer of all implied warranties, but does indicate that implied warranties cannot be imposed on a seller when they conflict with the terms of the sale agreement. In the present case the asserted warranty does conflict with the express terms of the sale agreement.
For the foregoing reasons, we hold the disclaimer is not invalid as against public policy and affirm the summary judgment.
WALDEN, C.J., and WARREN, LAMAR, Associate Judge, concur.
NOTES
[1] Manheim v. Ford Motor Company, Fla. App. 1967, 194 So.2d 54.
[2] the case of Rozen v. Chrysler Corp., Fla.App. 1962, 142 So.2d 735, the Third District had before it a suit by a purchaser of a Chrysler automobile against Chrysler Corporation, the manufacturer. The basis of the suit was an implied warranty of fitness. The court there held that an express warranty and disclaimer in the agreement between the Chrysler Corporation and its dealer excluded all implied warranties. That this in fact is the holding of Rozen v. Chrysler Corp. becomes apparent after a reading not only of that decision (including footnotes) but also of the comments of Judge Carroll in Manheim v. Ford Motor Company, Fla. App. 1967, 194 So.2d 54 and the comments of Judge Pearson in Friedman v. Ford Motor Company, Fla.App. 1965, 179 So.2d 371. It can, therefore, safely be said that Manheim v. Ford Motor Company decided by the Florida Supreme Court overruled Rozen v. Chrysler and the cases relying thereon. The point is, however, that the court in Manheim v. Ford Motor Company, supra, did not adjudicate the issue before us.